### 5386.   JORDAN *v.* THE STATE.

1. In giving requested instructions to the jury, it seems to be the better practice for the court to omit any statement as to their being given at the request of counsel; but a new trial will not be granted on the ground that the judge prefaced the reading of a requested instruction with the words, "By request of counsel for the defendant, I charge you the following section of the code," etc.; and also, "By request of defendant's counsel, I charge you the following."

2. Where the court charged the jury in the language of a written request, with the following introductory remark, "By the request of the counsel

for the defendant, and no objection being offered by the State, I charge you the following section of the code," etc., it was not a necessary conclusion, taking the charge as a whole, that the use of the words, "no objection being offered by the State," minimized to a material degree the effect of the language of the requested instruction.

3. Parents have the authority to use necessary force to protect their daughters from seduction or debauchery, but may not assault an apparent suitor merely on the assumption that he may prove to be a seducer, unless the known facts and circumstances at the time are sufficient to legitimately induce this conclusion.

4. There was no material error of law committed by the trial judge, and the evidence warranted the verdict.

DECIDED APRIL 18, 1914.

Accusation of assault and battery; from city court of Wrightsville—Judge Kent. November 13, 1913.

*B. B. Blount,* for plaintiff in error.

*A. L. Hatcher, solicitor,* contra.

WADE, J. It appears, from the evidence, that Hawkins, whose father instituted the prosecution against the defendant, Jordan, was only twenty years of age, and, like the average normal youth, enjoyed the society of the fair sex whenever possible; and, regardless of Mr. Kipling's assertion that "the female of the species is more deadly than the male," it seems that he often braved danger and was more or less a general beau, and did not by any means confine his attentions to one, or even two, of the neighboring girls, but was in the habit of indulging in the usual innocent attentions— going to church on several occasions with different young ladies, and, as opportunity offered, tendering delicate attentions in the way of Coca-Cola drinks and gifts of kodak films; that on a particular Sunday he met a Miss Heisel and paid her some attention in her mother's presence, drinking Coca-Cola with them; that later, on the date of the occurrence out of which this prosecution arose (July 18, 1913), he met Miss Heisel and the defendant's daughter in Wrightsville, Ga., in the afternoon, on a public street, and bought crackers and Coca-Cola for them, and finally started to accompany them on their way home; that an automobile drove up with two young men of their acquaintance occupying the car, who, at the request of the two girls, took them to the home of the girls, with Hawkins; and that when they reached there the girls said something about continuing the ride, and said that their parents would not object, provided they returned by dark. The ride was continued, and, on reaching the town of Harrison, Miss Heisel sug-

gested that they continue to Tennille, and the driver of the car agreed to this. The young men bought Coca-Cola and kodak films for the girls in Tennille and started home, but the tire blew out, and after they had fixed the tire, they had trouble with it again; it took about an hour to put in the new inner-tube and fix the car, so that it was about 8 o'clock when they got back to Mr. Jordan's. At the time of the blow-out, the boys lighted up the automobile with an oil light, though it was not dark then. When they reached Mr. Jordan's house there was a lantern in the road, and as they came up he said, "All of you get out, I am going to kill all of you." Mrs. Burnett (the mother of Miss Heisel) began whipping Hawkins with a buggy-whip, and hit him over the head with the butt-end of the whip and broke his hat, and Mr. Jordan said, "Lay it on him." While Mrs. Burnett was whipping Hawkins, Jordan stood there with a pistol pointed at him, and Hawkins backed down the road, trying to explain, but was not allowed to do so. He never knew that Mrs. Burnett objected to his paying her daughter attentions, nor did he know why she got angry with him, and cursed and whipped him on this occasion. When the car stopped Mr. Jordan told them to get out, that he was going to kill them, and asked, "Where is my girl?" He did not shoot, but brought the lantern to the car and walked up and down all the time Mrs. Burnett was whipping Hawkins, and said, "Put it on him." Hawkins testified that he supposed he stayed there ten or fifteen minutes, Mrs. Burnett beating him all the time; that he did not know what Mr. Jordan would do, and this was the reason he did not run when he got the ladies between Jordan and himself; that he could do nothing else but stand up and take a whipping, with a man with a pistol pointed at him. Claude Tompkins and Lautis Lovett, the other young men in the car, corroborated the testimony of Hawkins; and it appears from the testimony of the three young men who shared the unfortunate automobile ride that nothing whatever of an improper nature occurred between them and the young ladies; nor does it appear that the delay in returning the girls to their homes was premeditated or intentional, but, to the contrary, the accident which delayed the party seems to have been one of those which frequently add the zest of uncertainty to an automobile drive.

Jordan was tried on an accusation of assault and battery, was found guilty, and made a motion for a new trial, which was denied, and he brought the case to this court.

In the motion for a new trial it is contended that in reading to the jury instructions requested by counsel for the defendant, the court erred in prefacing the instructions with the language set out in the first and second headnotes of this decision. In the case of *Dotson* v. *State*, 136 *Ga.* 243 (71 S. E. 164), in which the trial judge, in giving a requested charge, said: "Gentlemen, the defendant has requested the court to charge you the following, which I will read,"·it was said by Justice Evans: "It is the duty of juries to take the law from the court, under our system of procedure. Judges are forbidden to express an opinion upon the facts, and the jury always look to emanations from the bench in the final charge as the last word upon the law of the case. We do not doubt that the jury understood that the requests which the court read to them, were a part of his charge, and were to be sc considered in arriving at their verdict." Our Supreme Court held in the case of *Georgia Railroad & Banking Company* v. *Flowers*, 108 *Ga.* 795 (33 S. E. 874), that "it is the duty of a judge, when appropriate written requests to charge are duly presented, not merely to read the same to the jury, but to inform them that such requests are correct propositions of law, to be considered along with other instructions given in the case." This court held in the case of *Blandon* v. *State*, 6 *Ga. App.* 782 (65 S. E. 842): "It is not in compliance with the concluding sentence of section 1060 of the Penal Code of 1895 [Penal Code of 1910, § 1087], relating to requests to charge, that the judge should simply state to the jury that he has been requested to give them the charge which he reads them. It is necessary that it should explicity appear to the jury that the judge himself gives the instruction." In the case now under consideration the judge used language much better calculated to convey to the jury the idea that he himself was giving the instruction covered by the written request than that employed in the *Dotson* case, since he used the words, "I charge you the following section of the code," and "I charge you the following;" which appears to us to have been a definite adoption of the written request as a part of the law of the case.

It is ingeniously contended by counsel for the plaintiff in error that the modifying words, "and no objection being offered by the State," preceding the giving of the written charge, indicated to the jury a doubt as to its being the law of the case, and indicated

that if any objection had been made by the State, the court would not have charged as requested, and tended to prejudice the minds of the jury against the defendant, and practically instructed them that the contentions of the defendant as embodied in the request were without merit and should not be considered, and also tended to express an opinion as to what had or had not been proved in the case. We do not agree with counsel, but on the contrary, taking the charge as a whole and considering the connection in which the words were used, we think the case was fairly submitted, and that no injury could have flowed to the defendant from the statement that the request of counsel was complied with without objection from the State. It seems to us that the natural effect of these words might have been to impress the jury with the idea that the requested charge contained such a manifestly correct statement of the law that it was submitted without objection, and, in effect, by the consent or approval of the State's attorney, as embodying ax-iomatic truth.

While it is true that parents have authority to protect their daughters from seduction or debauchery, and need not wait until after the evil is accomplished, before interposing by the use of all necessary force, they can not assume the existence of danger with-out some sufficient evidence to create a reasonable fear, and can not act on such an assumption by violently assaulting one whom they find in the society of a daughter, on the mere surmise that he may be at least a potential seducer. Every protection which the strong arm of the law can offer should be thrown around the family or the domestic rights of a citizen, and any wanton invasion of such rights the head of the family is allowed to repel, but to permit a too-suspicious father to misinterpret apparently innocent attentions shown his daughter, and aid in visiting on the head of the author of such attentions a severe and disgraceful beating, because of an unwarranted supposition that his daughter's chastity had been in danger, would be stretching the rule beyond its utmost proper limits.

The evidence in this case amply supported the verdict, and the charge of the court, taken altogether, was fair and impartial.

It is complained that the court erred in charging the jury that "before Hawkins, the witness who was beaten, could be punished for wrong-doing towards the daughter of the defendant, you must find, from the evidence, that that was the object of his visit to her:

and if seduction or adultery had taken place before the alleged assault and the alleged assault was given for revenge, and not to prevent it, it would not be justifiable." It is alleged that this charge intimated an opinion to the jury as to what had or had not been proved, and took away from them the effect of the written request, and left them where they could not consider the charge given by request, and intimated that the defense rested on the idea of an actual assault or the seduction of the daughter of the defendant. We do not agree that the exceptions taken to this charge are well founded, and we think the controlling doctrine was fairly submitted to the jury.    *Judgment affirmed. Roan, J., absent.*